UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
TYHEEM KEESH (a.k.a. TYHEEM ALLAH),   :
                                      :    **MEMORANDUM AND ORDER**
              Plaintiff,              :    **GRANTING DEFENDANTS'**
    -against-                         :    **MOTION FOR SUMMARY**
                                      :    **JUDGMENT IN PART AND**
CHRISTOPHER ARTUZ, former Superintendent  :  **DENYING IN PART**
of the Green Haven Correctional Facility ("Green  :
Haven"), and JOSEPH T. SMITH, Superintendent   :   97 Civ. 8417 (AKH)
of Shawangunk Correctional Facility   :
("Shawangunk"), and JANE/JOHN DOE(S), :
Physicians and/or Physicians' Assistants,   :
                                      :
              Defendants.             :
                                      :
------------------------------------------------------------ x

ALVIN K. HELLERSTEIN, U.S.D.J.:

   Plaintiff Tyheem Keesh (a.k.a. Tyheem Allah) ("Keesh"), an inmate at Shawangunk Correctional Facility ("Shawangunk") in Wallkill, New York, brings this action pursuant to 42 U.S.C. §§ 1983 and 1985, alleging violations of his Eighth and Fourteenth Amendment rights under the United States Constitution. Plaintiff claims that he suffered injuries to his mental and physical health as a result of exposure to environmental tobacco smoke ("ETS"), denial of basic medical care, and emotional trauma from acts of conspiracy committed by defendants as retaliation for plaintiff's attempt to exercise his constitutional rights. Defendants bring this motion for summary judgment against Keesh, claiming that plaintiff has failed to present a genuine issue of fact. For the reasons stated below, defendants' motion is granted in part and denied in part.

   **I.  Facts**

   Plaintiff has been incarcerated in New York State prisons since 1990, and is currently incarcerated at Shawangunk. Plaintiff has lived in no less than five different facilities

-1-

during his incarceration as a New York State inmate. He was housed at Green Haven Correctional Facility ("Green Haven"), where defendant Christopher Artuz ("Artuz") served as Superintendent for less than 12 months between 1992 and 1994, and in 1997. (Def't.'s Statement of Facts pursuant to Local Rule 56.1). It was during these months that Keesh claimed Artuz smoked around him in the prison, in violation of the Clean Indoor Act, resulting in plaintiff having difficulty breathing and "chest pain, eye irritation, dry mouth and throat." (Amended Cplt., ¶ 7).

Plaintiff next alleges that he was the victim of retaliatory conduct by Artuz after he complained about the secondhand smoke, causing him emotional injury including "nightmares, feelings of powerlessness and distrust of white people, and various other psychological difficulties," (Id. at ¶ 13), and causing him to be placed in the Segregated Housing Unit ("SHU") for 36 days, which plaintiff claimed resulted in a deprivation of "essential medical . . . treatment" and caused plaintiff to suffer "excrutiating [sic] pain, tantamount to torture." (Id. at ¶ 12).

Similarly, plaintiff alleges that defendant Smith, while superintendent of Shawangunk, failed properly to respond to plaintiff's complaints of exposure to ETS, and that John/Jane Doe physician defendants failed to provide proper medical care for plaintiff, in violation of his Eighth Amendment rights and demonstrating a deliberate indifference to medical care. Finally, plaintiff alleges a Section 1985 conspiracy claim against the prison officials.

II. **Procedural History**

Plaintiff, proceeding *pro se* at the time, filed his original complaint on Nov. 13, 1997, alleging that the hearings conducted for disciplinary charges against him for inappropriate conduct while in his cell at Green Haven were biased against him. On March 17, 1994, plaintiff

was observed naked in his cell by Corrections Officer Tammy Bezio. Bezio wrote plaintiff a ticket for masturbating and exposing himself, a violation of prison rules. Plaintiff claimed that he was performing a Muslim ritual act known as "fitr," and did not intend to expose himself to Bezio. At the conclusion of the hearings, the officers found plaintiff guilty and punished him with 20 days of pre-hearing "keeplock" and 150 days in the SHU. In addition to claiming the officers running the hearings were not impartial, plaintiff also alleged that he was denied medical treatment while confined in the SHU for tuberculosis, and suffered emotional and psychological damage, as well as great pain in his feet as a result of defendant Artuz failing to provide adequate follow-up care after his foot surgery. As a remedy, plaintiff sought compensatory and punitive damages from the defendants.

On July 24, 2000, I dismissed plaintiff's complaint in its entirety, for failure to plead a cause of action and lack of subject-matter jurisdiction. Plaintiff moved for reconsideration of my decision, and on August 29, 2000, I denied that motion as well. Plaintiff subsequently appealed to the Second Circuit, and on Jan. 23, 2004, the Second Circuit vacated my decision and remanded the case, finding that Keesh should be permitted to amend his pleadings to state timely claims, and that since *pro se* pleadings must be construed liberally, plaintiff's claims against John/Jane Doe physician defendants were sufficiently alleged to survive dismissal.

On December 15, 2004, plaintiff, now proceeding with the assistance of counsel, filed an Amended Complaint, alleging his Eighth and Fourteenth Amendment rights under the Constitution were violated by alleged injuries to his health from the ETS exposure, denial of medical care, and acts of retaliation and conspiracy by defendants in response to plaintiff's complaints as an inmate at Green Haven and Shawangunk. See Amend. Cplt., ¶¶ 7-20. After

both parties conducted depositions and completed discovery, defendants filed a motion for summary judgment on May 10, 2007. Even after discovery, plaintiff has failed to identify the "John Doe" and "Jane Doe" defendants. Accordingly, the complaint against them must be dismissed. See Valentin v. Dinkins, 121 F.3d 72, 75 (2d Cir. 1997).

### III.    Standard of Review & Analysis

Summary judgment may be granted if there are "no genuine issues as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue" of "material fact" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to come forward with competent evidence:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Although all facts and inferences therefrom are to be construed in favor of the party opposing the motion, Harlen Assocs. v. Village of Mineola, 273 F.3d 494, 498 (2d Cir. 2001), that party must raise more than just a "metaphysical doubt" as to a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[M]ere speculation and conjecture is insufficient to preclude the granting of the motion." Harlen, 273 F.3d at 499. Accordingly, if the "evidence favoring the nonmoving party …. is merely colorable

or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). For purposes of this motion, each of plaintiff's claims will be addressed in turn.

1. **Plaintiff's ETS Claims against Defendants Artuz and Smith**

Plaintiff's ETS claims arise from his time as an inmate at Green Haven, where he claims that defendant Artuz, as superintendent of the facility, smoked around the plaintiff, leading to plaintiff's chest pain, breathing difficulties, eye irritation, and dry mouth and throat. (Amended Cplt. ¶ 7; Tr. of Dep'n of Tyheem Keesh. 108:24). A prisoner's complaints under the Eighth Amendment must satisfy a two-prong test in order to survive summary judgment. See, e.g., Farmer v. Brennan, 511 U.S. 825, 833 (1995). When a prisoner challenges his conditions of confinement based on alleged ETS exposure, to meet the objective prong, plaintiff must show ETS exposure that imposes "an unreasonable risk of serious damage to his future health," and violate "contemporary standards of decency." Helling, 509 U.S. 25, 32-35 (applying test to prisoner who brought claim for ETS exposure after being housed in a cell with another inmate smoking 5 packs of cigarettes a day). The formulation of the rule is that plaintiff has been subjected to "a condition of urgency, one that may produce death, degeneration or extreme pain." See Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

Plaintiff's claim fails to meet the objective test, because neither his pleadings nor his deposition testimony provide any basis for a finding that he experienced a "risk of serious damage to his future health." When pressed at his deposition to name specific instances as to when Superintendent Artuz smoked in his presence, he stated that he doesn't "recall a day offhand," but remembers "him smoking around me in the J school area . . . his demeanor was that if I challenged [him] he was going to have me retaliated against in some form." Dep. Tr. of

Keesh at 107-08. However, there are no records of any alleged complaints, and plaintiff did not provide any evidence to substantiate such a claim, such as affidavits from fellow inmates who also witnessed defendant Artuz's smoking. The plaintiff has also failed to provide any evidence of even the general level of ETS to which he was exposed during the period of 12 months between 1992-94 when he was housed at Green Haven, and even construing his vague testimony in the most favorable light possible, plaintiff would have been exposed to far less ETS than was present in other cases denying summary judgment for defendants. See, e.g., Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002) (denying summary judgment when inmate was required to share cell with smoker and was always housed in a unit where majority of inmates smoked and constantly subjected to level of smoke in cell as if he were smoking); Warren v. Keane, 937 F.Supp. 301, 303 (S.D.N.Y. 1996) (plaintiffs alleged that smoking in unventilated cells and recreation room for five years posed long-term health risks). Plaintiff himself concedes that no medical professional has ever attributed any genuine physical ailment to the alleged exposure to secondhand smoke. See Dep. Tr. of Keesh at 91. Furthermore, the affidavit provided by his doctor, Dr. Genovese, states that plaintiff's medical records "reveal no symptoms of pulmonary disease or any disease or symptom related to exposure to Environmental Tobacco Smoke," and that his records "further reveal no pulmonary complaints." Def't's Br., Ex. D.

Of course, no one can predict future health, not one's own and not anyone else's. There are all kinds of stimuli in modern life, particularly in congested environments, and people have varying sensitivities to what others do. But nothing in the record rises to a level of proof that passes the objective test required by law for a "1983" case to proceed.

The subjective prong of the test requires plaintiff to prove that law enforcement officials acted with "deliberate indifference to inmate health or safety." See, e.g., Phelps v.

Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002). Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Here, plaintiff has alleged that he complained to numerous officials about the secondhand smoke exposure from defendant Artuz, including to Artuz himself, but the smoking continued, but provides no evidence to confirm his version of events. Tr. of Keesh at 67-68. Defendants have rebutted plaintiff's claim with a declaration of defendant Artuz stating that Artuz never smoked around inmates, and that he does not recall any complaints made by plaintiff about his smoking. Artuz Decl., 2.

Since plaintiff cannot satisfy the "objective" prong, I am not required to decide if, on a summary judgment motion, defendant Artuz's evidence is conclusive. It is persuasive, and plaintiff's assertions are conclusory, but the issue comes down to credibility, and I cannot decide such an issue on a motion for summary judgment. Therefore, I do not decide if plaintiff has met the subjective prong of the test.

Since, clearly, plaintiff cannot satisfy the objective prong, defendants' motion dismissing plaintiff's ETS claims is granted.

**2. Plaintiff's Claim of Denial of Medical Care**

Plaintiff alleges several instances of a denial of medical care while incarcerated. In his amended complaint, plaintiff alleges the following: (1) his request for a respiratory mask and goggles due to his breathing difficulties, chest pain, eye irritation, and dry mouth and throat due to the second hand smoke was improperly ignored; (2) defendant(s) Jane/John Doe(s) had the responsibility of examining him and noting the existence of any chronic disease upon his arrival in SHU, but defendant(s) Jane/ John Doe(s) failed to inform him or offer treatment for his

alleged tuberculosis even though he complained of tuberculosis symptoms; (3) he was denied needed follow-up treatment after he had pins removed from his feet and this caused him excruciating pain; (4) defendant(s) Jane/ John Doe(s) neglected and poorly treated plaintiff's psychological difficulties and exacerbated these difficulties by failing to monitor his medication, and (5) he was denied medical care for his psychological impairments because the prison did not employ an African American mental health professional.

For plaintiff to establish an Eighth Amendment claim for denial of medical care, he must prove " a deliberate indifference to [his] serious medical needs.'" Estelle v. Gamble, 429 U.S. 97, 104 (1976). Defendants addressed and treated all of plaintiff's medical complaints, with the exception of the issue regarding the pins in plaintiff's feet. For instance, plaintiff's complaints about respiratory illness due to second hand smoke were more than adequately addressed when defendants conducted a thorough examination including x-rays and heart monitoring. Similarly, plaintiff's claim that he was denied treatment for tuberculosis is without merit. Countless medical records indicate that plaintiff was exposed to tuberculosis and was treated with the full course of prophylactic antibiotic treatment, and has been monitored to ensure the exposure did not progress to illness. Def't's Br. Ex. C.

Plaintiff's claim of deliberate indifference in regard to his mental health is also without merit. As to the claim of poor monitoring of medication, plaintiff's medical records do not reveal any psychological disease or course of any medicinal treatment for psychological disease throughout his incarceration. Furthermore, assuming that plaintiff was seeking help from a mental health professional, plaintiff does not offer any proof that defendants showed deliberate indifference to this need. Plaintiff concedes that DOCS provided mental health professionals to treat him, but states that he was not comfortable working with them because of

his "distrust of white people." However, plaintiff is not entitled to choose the race, gender, or ethnic background of a health provider, and has no complaint on that basis. See Chance, 143 F.3d at 703. ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."). Defendants' Motion for Summary judgment is granted in regard to all of plaintiff's denial of medical care complaints, with the exception of his complaint about the surgical pins in his feet.

Summary judgment cannot be granted as to plaintiff's allegation that defendants failed to allow him a follow up treatment to remove the pins that were surgically implanted in his feet during a surgery performed on August 15, 1994. Plaintiff alleges, and medical records confirm, that these pins caused plaintiff pain and needed to be removed. On April 19, 1995, a physician at the Erie County Medical Center ("the Medical Center") determined that there was no need to remove these pins. The Second Circuit directed the Office of the Attorney General look into this matter in greater detail. Def't's Br., Ex. C M0123- M0124. In a letter dated, January 13, 2004, the Attorney General advised the nurse practitioner at Shawangunk Correctional Facility to ask plaintiff if he would like to be examined by a physician, and advised that if plaintiff still complains of foot pain to consider referring plaintiff to an outside physician. Id. Plaintiff's medical records show a referral for a visit to an orthopedist dated February 5, 2004, but he was then denied this visit on a notification form dated the same day. There is also an orthopedic referral dated April 4, 2006, but no records of this visit ever occurring.

Two important issues of fact are present here that make this issue impossible to decide on a motion for summary judgment. First, it is unclear whether plaintiff has exhausted his administrative remedies in regard to this issue. There are approximately seven exhausted claims listed in defendant's Exhibit H. Four are unspecific as to what type of medical care plaintiff

grieved. Furthermore, three of these exhausted grievances are specifically about plaintiff's complaints about his feet and footwear, they are, however, unspecific as to whether these complaints were related to the pins in plaintiff's feet. Also, plaintiff wrote a letter on August 26, 2001, to Commissioner Glenn S. Goord of the DOCS, which discussed his feet problems and multiple surgeries.

Also at issue is whether medical staff has adequately addressed plaintiff's problems regarding the pins in his feet. In his amended complaint, plaintiff asserts that he had surgery on August 15, 1994, and pins were placed in his feet at that time. He alleges that he was moved into the Special Housing Unit, causing him to forego the necessary removal of these pins. X-rays of plaintiff's left and right feet performed on April 21, 1998, revealed that plaintiff had a surgical nail (pin) in his first metatarsal (foot) bone in his left and right foot. It also showed that plaintiff had a surgical pin in his right medial malleolus (ankle) bone. Plaintiff's medical records reveal that he had "hardware removed" in his ankle on September 27, 1999. Nevertheless, an x-ray performed as recently as June 18, 2003, showed that the pins were still present in plaintiff's feet. As far as DOCS response to the Attorney General's request for further treatment, all that is shown in plaintiff's medical records is that plaintiff signed consent to see an orthopedist on February 5, 2005; and on that same date, plaintiff was also given notice that Erie County Medical Center found that he need not see an orthopedist. There is no medical report from the medical center or explanation as to why he need not see an orthopedist. At most, this notification looks like a reiteration of the Medical Center's 1995 opinion. Furthermore, there are reports from other treating orthopedists that reflect that pin removal would be beneficial to the plaintiff's health. Because there is a genuine issue of material fact as to whether plaintiff exhausted his administrative remedies within the DOCS administrative system and whether plaintiff has a

medical need to have the pins removed from his feet, summary judgment as to plaintiff's complaint about denial of medical care in regard to the removal of pins in his feet must be denied at this time.

### 3. Plaintiff has failed to exhaust his administrative remedies against Defendant Smith as required by the PLRA.

The Prison Litigation Reform Act ("PLRA") provides the following: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e). However, "failure to exhaust is an affirmative defense under the PLRA, and [ ] inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199 (2007). To properly exhaust administrative remedies, an inmate must comply with prison grievance procedures, which vary from facility to facility.

A three-part test is used to determine whether a prisoner has exhausted his administrative remedies. First, whether administrative remedies were available to the inmate; second, whether defendants waived the affirmative defense of failure to exhaust by failing to raise it, and third, whether the defendants' actions inhibited the inmate's ability to properly exhaust, thereby estopping defendants from raising unexhaustion as a defense. See Hemphill, 380 F.3d at 686 (2d Cir. 2004).

Here, administrative remedy procedures, implemented by DOCS, were made available to plaintiff on three levels. At the lowest level, inmates may initiate the administrative review process by filing a grievance with an Inmate Grievance Coordinator at the facility. See 7 N.Y.C.R.R. §§ 701 et seq. If this response fails to satisfy the inmate, he may appeal to the facility superintendent, and then to a central appellate body, the Central Office Review

Committee ("CORC"). 7 N.Y.C.R.R. § 701.7(b), (c). If the inmate has completed all three levels of review and is still unsatisfied, the claim is then considered exhausted. Plaintiff here has failed to exhaust even the first level of administrative remedies in place; plaintiff claims only to have "complained to the Superintendent" and that he "wrote to the Deputy Commissioner in Albany." Keesh Dep. Tr. at 78:18-19. Since plaintiff alleges no "special circumstances" that could plausibly have justified his failure to comply with the procedural requirements, all of plaintiff's unexhausted claims, under 42 U.S.C. §§ 1983, 1985 and 1986, with the exception of claims relating to the pins in plaintiff's foot, are hereby dismissed.

### 4. Plaintiff's Retaliation & Conspiracy Claims

An inmate has a constitutionally protected right to file grievances, and prison officials are not permitted to retaliate against an inmate for exercising that right. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995). A prisoner must prove the following in order to sustain a retaliation claim: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotations and citations omitted).

Keesh alleges that as a result of his complaints about the secondhand smoking and his filing of grievances (although he presents no evidence that such grievances were in fact filed or submitted, see Keesh Dep. 74: 17), officials at Green Haven filed a misbehavior report and placed him in segregated housing for 36 days. However, the actual cause for the misbehavior report and subsequent segregation was related to an incident on July 19, 1994, when Officer Bezio witnessed plaintiff exposing himself in his cell. Following review, the misbehavior report was reversed and the record was expunged. See Def't.'s Br., Ex. G. Keesh fails to establish the

third requirement of the test – that there is a causal link between Keesh's protected speech and his subsequent placement in the SHU.  He does not recall even approximate dates of when he made informal complaints to officers about secondhand smoke exposure, making it impossible to connect the two events in any way.  Accordingly, plaintiff's claims of retaliation against defendant Artuz are dismissed in full.

Similarly, plaintiff's conspiracy claims fail because they do not identify a "factual basis supporting a meeting of the minds" between defendants to achieve an unlawful goal.  See, e.g., Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003).  To state a claim for conspiracy under 42 U.S.C. § 1985, the plaintiff must show that defendants: (1) engaged in a conspiracy; (2) conspired for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws; (3) acted in furtherance of the conspiracy; and (4) resulting in a person's injury to himself or his property, or deprived of any right of a citizen of the United States.  Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (internal citations omitted).  Even if plaintiff had properly exhausted this claim as required by the PLRA, I find that he fails to allege any facts that would support even the existence of a conspiracy and therefore cannot get past the first of the four steps required by law to properly plead a conspiracy.

### III.  Conclusion

For the aforementioned reasons, defendant's motion for summary judgment is granted in respect to plaintiff's ETS claims against Defendants Artuz and Smith, plaintiff's retaliation claims, and plaintiff's medical indifference claims about his breathing difficulties, alleged tuberculosis, and mental illness.  Summary judgment is denied as to plaintiff's denial of medical care claim in regard to his feet problems because there are genuine issues of material

fact relating to the exhaustion of administrative remedies and the medical necessity of pin removal. The denial is made without prejudice to a renewal of the motion based on clearer and better proofs.

The Court hereby recommends that plaintiff be sent to a qualified medical expert for an inquiry into the medical status of pins in his feet and any other treatment that may be necessary as a result. Additionally, the Court requests that defendants provide further information as to plaintiff's exhaustion of administrative remedies with respect to his medical grievances regarding his feet problems and any medical records regarding referrals to medical experts for plaintiff's feet issues. Defendants are ordered to provide the Court with a report of its findings within 30 days, with a Friday status conference to be scheduled a week to ten days afterward.

SO ORDERED.

Dated: August 6, 2008
New York, New York

_____
ALVIN K. HELLERSTEIN
United States District Judge